UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TolTest, Inc.,                                             Case No. 3:12-cv-01821

        Plaintiff

v.                                                 MEMORANDUM OPINION
                                                  AND ORDER

Purcell P&C, L.L.C., et al.,

        Defendants

### INTRODUCTION

This matter is before me on the motion of Defendant International Fidelity Insurance Company ("IFIC") for partial judgment on the pleadings pursuant to Fed. R. Civ. Pro. 12(c). (Doc. No. 28). Plaintiff TolTest, Inc. filed a brief in response. (Doc. No. 31). IFIC filed a brief in reply. For the reasons stated below, IFIC's motion is granted in part and denied in part.

### STANDARD

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed R. Civ. Pro. 12(c). Motions for judgment on the pleadings are analyzed under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295 (6th Cir. 2008). In ruling on a motion for judgment on the pleadings, a court "must construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine when the moving party is entitled to

judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). A court "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007). A complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

## BACKGROUND

On October 9, 2009, the United States Department of the Navy awarded TolTest a contract to perform repairs on underground fuel storage tanks at a Naval supply center in Bremerton, Washington. TolTest then contracted with Purcell P&C, LLC, to complete sandblasting and recoating of the tanks. A provision of the subcontract required Purcell to obtain a performance bond; Purcell obtained this bond from IFIC. Subsequently, TolTest terminated the subcontract, asserting the Navy had barred Purcell employees from the construction site after Purcell repeatedly violated safety regulations, missed deadlines, and failed to meet quality standards. After terminating the subcontract, TolTest sought to enforce the performance bond. After an investigation, the thoroughness and impartiality of which the parties dispute, IFIC refused to arrange for substitute performance and denied it had any obligation to TolTest.

TolTest asserts breach of contract claims against Purcell, and claims for breach of the suretyship agreement and bad faith against IFIC. TolTest's bad faith claim currently is at issue.

In its motion for partial judgment on the pleadings, IFIC asserts it is entitled to judgment as a matter of law because Ohio does not recognize a tort claim for bad faith brought by an obligee against a surety on a performance bond. (Doc. No. 28 at 8-9). IFIC bases its argument on the finding of the court in *In re Commercial Money Center, Inc.*, 603 F.Supp.2d 1095 (N.D. Ohio 2009), that

2

Ohio courts "would refuse to recognize a bad faith tort claim" arising from a contractual relationship between a surety and an obligee. *Id.* at 1124. While conceding Ohio recognizes bad faith claims against insurance companies and issuers of financial responsibility bonds,[1] IFIC points out these are exceptions to the general rule in Ohio that "it is 'no tort to breach a contract' . . . no matter how willful or malicious the breach." (Doc. No. 28 at 6 (*quoting In re Commercial Money Center*, 603 F.Supp.2d at 1120)).

In response, TolTest argues "[t]he difference between bonds and other forms of insurance . . . provides no basis for refusing to recognize the right of an obligee, the intended beneficiary of the bond's promises, to pursue a claim when the surety in bad faith ignores its obligations." (Doc. No. 31 at 7). TolTest contends "there is no meaningful distinction that would permit a bad faith claim arising in the context of a financial responsibility bond, but would deny a claim in the context of any other form of bond, including a performance bond . . . ." (Id. at 8). TolTest correctly notes the court's decision in *In re Commercial Money Center* is not controlling, and argues that case "should be left to its 'convoluted facts' . . . ." (Id. at 18).

## ANALYSIS

Where the basis for jurisdiction in a federal court is party diversity, the court must apply state substantive law and federal procedural law. *See, e.g., Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). If the highest court of the state has not issued a decision concerning the applicable law, the federal court shall ascertain the state law from "all relevant sources." *Dolly v. Old Republic Ins. Co.*, 200 F.Supp.2d 823, 829 (N.D. Ohio 2002) (*citing Hisrich*, 226 F.3d at 449 n.3).

---

[1] *See Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315 (Ohio 1983) (insurer has a duty to act in good faith in handling and paying claims of its insured, based on the relationship between the two) and *Suver v. Personal Serv. Ins. Co.*, 462 N.E.2d 415 (Ohio 1984) (injured third party may assert a bad faith tort claim against the issuer of a financial responsibility bond because of the nearly identical functions of liability insurance and financial responsibility bonds).

TolTest argues Ohio law permits its bad faith tort claim against IFIC because the Supreme Court of Ohio permitted a third party claim against the issuer of a financial responsibility bond in *Suver v. Personal Serv. Ins. Co.*, 462 N.E.2d 415 (Ohio 1984), and "there is no meaningful distinction that would permit a bad faith claim arising in the context of any other form of bond, including a performance bond" like the one here at issue.  (Doc. No. 31 at 8).  IFIC contends "the *Commercial Money Center* decision obviates the bad faith claim . . . TolTest . . . now asserts against IFIC" and "any effort to equate a commercial surety bond with a financial responsibility bond expands *Suver* beyond the contours of its own facts."  (Doc. No. 33 at 1-2).

The first part of IFIC's contention is overreaching.  The *Commercial Money Center* case was litigated in a federal district court, not a state court.  It does not pronounce Ohio law and I need not defer to the court's decision in that case.  Further, though IFIC frequently refers to *Commercial Money Center* as "this Court['s]" decision, another district court judge presided over the litigation.  (*See* Doc. No. 28 at 4, 5; Doc. No. 33 at 1, 2, 9, 12).  A district court opinion is "binding only on the parties under principles of res judicata and even the . . . judge who authored [the opinion] is not otherwise obligated, except in service of a seemly consistency, to follow [that opinion] in later cases."  *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F.Supp.2d 227, 239 (D. Mass. 2011); *see also Bridgeport Music, Inc. v. Dimension Films*, 401 F.3d 647, 650 (6th Cir. 2004) (district court opinions have "no binding precedential value") and *Smith v. Astrue*, 639 F.Supp.2d 836, 841-42 (W.D. Mich. 2009) (noting district court decisions constitute <u>persuasive authority</u>) (emphasis added).

The court's decision in *Suver* is the closest the Supreme Court of Ohio has come to deciding the issue at hand.  In *Suver*, the court considered "whether an injured third party can state a claim for compensatory and punitive damages against an issuer of a financial responsibility bond for the malicious and willful failure to pay the amount of the bond."  *Suver*, 462 N.E.2d at 416.  A financial responsibility bond may be filed by a person registering a motor vehicle in place of filing a certificate

4

of liability insurance. O.R.C. §§ 4509.45, 4509.59. The Supreme Court of Ohio concluded "the issuer of a financial responsibility bond has a duty to act in good faith in the handling and payment of claims by one who may be injured by the principal." *Suver*, 462 N.E.2d at 417. The court stated financial responsibility bonds and liability insurance policies "differ primarily in whom they protect and to whom the duty runs" but reasoned those differences "are not so pronounced as to require the creation of a cause of action in one case and its denial in the other." *Id.* Further, the court explained that "[t]he relationship between an injured third party and a surety, <u>in the context of a financial responsibility bond</u>, and that between a policy holder and insurance company, in the traditional insurance context, are virtually identical." *Id.* (emphasis added). Thus, it seems clear the Supreme Court of Ohio intended to limit its ruling to the case before it and did not seek to rule, either in favor of or against, on the subject of surety bonds in other contexts, including public construction projects.

Though *Suver* is not controlling, it deserves attention as persuasive authority. First, however, some further context is in order. The general rule in Ohio is that "[i]t is not a tort to breach a contract, no matter how willful or malicious the breach." *Salvation Army v. Blue Cross and Blue Shield*, 636 N.E.2d 399, 403 (Ohio Ct. App. 1993); *see also Schwartz v. Bank One*, 619 N.E.2d 10, 13 (Ohio Ct. App. 1992) ("Where the duty allegedly breached by the defendant is one that arises out of a contract, independent of any duty imposed by law, the cause of action is one of contract." (*citing Ketcham v. Miller*, 136 N.E. 145, 146 (Ohio 1922)).

TolTest's argument that there is no meaningful distinction between a financial responsibility bond and other surety bonds misses an important part of the analysis. Under Ohio law, a cause of action in tort may arise if there is a "positive legal duty imposed by law due to the relationships of the parties." *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1320 (Ohio 1983). TolTest cannot proceed with a bad faith tort claim based on the surety agreement; if it seeks to pursue a claim

5

arising from the contract, it only can be a contract claim.  Rather, IFIC must have a "duty [that] is independent of any duty arising out of the contractual relationship of the parties" before TolTest may proceed with a tort claim for bad faith.  *Schrock Road Markets, Inc. v. HODCO Food System, Inc.*, No. 00AP-1156, 2001 WL 722078 (Ohio Ct. App. June 28, 2001).

      The parties point to numerous decisions from federal and state courts across the nation, as well as several secondary sources, in support of their respective positions.  At the center of IFIC's argument is the court's decision in *Commercial Money Center*.  In that case, the court was faced with a dispute concerning "liability on various surety bonds issued in connection with certain transactions between [banks] and Commercial Money Center, Inc.," with claims asserted under California, Ohio, and Georgia law by various plaintiffs.  *Commercial Money Center*, 603 F.Supp.2d at 1097, 1099-1100.  The court concluded Ohio courts would refuse to recognize a bad faith tort claim in the context of a construction performance bond.  *Id.* at 1124.

      IFIC states that "[a]s the [*Commercial Money Center* court] explained," Ohio law permits bad faith tort claims against insurers "because of the relationship between the parties and the fact that in the insurance field the insured usually has no voice in the preparation of the insurance policy and because of the great disparity between the economic positions of the parties to a contract of insurance."  (Doc. No. 28 at 6 (*quoting Commercial Money Center*, 603 F.Supp.2d at 1122)).  These issues – economic disparity and unequal bargaining power – are not present, IFIC claims, when, "as here, a performance bond involving three sophisticated commercial parties is at issue."  (Doc. No. 28 at 6).  "IFIC bears responsibilities to both Purcell and TolTest, which places the parties 'on a more equal contractual footing and diminish[es] the fiduciary aspect of the relationship.'"  (Doc. No. 28 at 7 (*quoting Commercial Money Center*, 603 F.Supp.2d at 1118-19) (alteration by IFIC)).  IFIC argues that permitting a bad faith tort claim in these circumstances would put the principal "in the unenviable position of having its surety be required to act for the benefit of the [obligee] in settling

claims."  (Doc. No. 28 at 7 (*quoting* Aron J. Frakes, *Surety Bad Faith: Tort Recovery for Breach of a Construction Performance Bond*, 2002 U. Ill. L. Rev. 497, 523 (2002) (hereinafter "Frakes"))).

Further, IFIC asserts the construction performance bond "works toward TolTest's commercial advantage" rather than protecting TolTest from "calamity. . . ."  (Doc. No. 28 at 7 (*citing Commercial Money Center*, 603 F.Supp.2d at 1124)).  It is IFIC's position that a construction performance bond is distinguishable from an insurance contract and a financial responsibility bond because "the animating principal behind a performance bond is the obligee's commercial advantage, rather than the 'peace of mind and protection against catastrophe' that prompts an insurance contract."  (Doc. No. 28 at 8 (*citing* Frakes at 518)).

TolTest argues that *Commercial Money Center*, as "a case involving highly unusual facts," is not persuasive and that courts in other jurisdictions, including Colorado, Delaware, New Jersey, Arizona, and Alaska, have relied at least in part on the Supreme Court of Ohio's reasoning in *Suver* "in upholding an obligee's claim against a surety for the bad faith response to the obligee's performance bond claim."  (Doc. No. 31 at 8).  TolTest summarizes the main thrust of its argument by stating:

> The common thread running through *Suver* and each of the *Suver* offspring from other jurisdictions is the recognition that a bond, like any form of insurance, has an intended beneficiary, that the beneficiary under a bond is the obligee, and the purpose of a bond would be defeated if a surety could ignore any responsibility to its obligee with impunity.

(Doc. No. 31 at 9).  TolTest also argues "the primary purpose" of a construction performance bond is to "insulat[e] the obligee from the risk of default [by the principal]" and is not merely for commercial advantage.  (Id. at 14 (*quoting Int'l Fidelity Ins. Co. v. Delmarva Systems*, No. 99C-10-065 WCC, 2001 WL 541469, at *9 (Del. Super. Ct. May 9, 2001))).

TolTest's reasoning is not entitled to deference or a presumption of correctness under Rules 12(b)(6) or 12(c).  *See, e.g., JPMorgan Chase*, 510 F.3d at 581-82 (a court need not accept legal

7

conclusions as true). Even if I assume the arguments supporting TolTest's position are correct,[2] however, those arguments fail to establish the existence of an independent duty imposed by law from which a tort claim may arise. In *Cates Constr., Inc. v. Talbot Partners*, 21 Cal.4th 28 (1999), the Supreme Court of California concluded an obligee of a construction performance bond could not recover upon a tort claim for the surety's failure to act in good faith. *Id.* at 34-35. The court relied in part on the following observations in distinguishing a liability insurance policy from a construction surety agreement:

> [A]n insured faces a unique economic dilemma when its insurer breaches the implied covenant of good faith and fair dealing. Unlike other parties in contract who typically may seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurance company willing to pay for a loss already incurred.

*Id.* at 44 (citations omitted).

Without question, TolTest suffered harm if IFIC, Purcell, or both breached their contracts with TolTest. That harm, however, would arise from the contractual obligations of the Defendants. TolTest states it "solicited bids from other subcontractors and retained [another construction company] to complete the work." (Doc. No. 1 at 8). TolTest sought "recourse in the marketplace" and apparently was able to fulfill its contract with the Navy. The insured-insurer relationship is contractual to be sure, but it also is marked by dependence. TolTest cannot show it is or was dependent upon IFIC's good faith investigation of TolTest's claim on the performance bond.

The Supreme Court of Ohio noted in *Suver* that the primary difference between financial responsibility bonds and liability insurance policies was "in whom they protect and to whom the duty runs. . . . [A] financial responsibility bond . . . is written for the protection of the motoring public who [sic] may be injured by the principal [while] . . . a liability insurance policy is written for

---

[2] These include (1) a construction performance bond is intended to prevent calamity rather than provide commercial advantage, (2) permitting a tort claim for bad faith will discourage "the routine denial of payment of claims for as long as possible," and (3) the proportionality of bargaining power and the sophistication of the parties is irrelevant to the existence of a duty of good faith. (Doc. No. 31 at 14-15, 16).

the protection of the insured." *Suver*, 462 N.E.2d at 417.  The court did not conclude that the relationship between a surety and an obligee was the same as that between an insurer and its insured.  Rather, it concluded that in the context of a financial responsibility bond, obtained pursuant to statute in place of a liability insurance policy, "logic compel[led]" the application of the same duty to the issuer of a financial responsibility bond as had been applied to an insurer.  *Id.*

Thus, I conclude that in the context of a construction performance bond Ohio courts would follow the general rule of *Ketcham* and its progeny, and not the exceptions identified in *Hoskins* and *Suver*.  TolTest may not proceed with a tort claim for bad faith against IFIC.  TolTest, however, may proceed with a contract claim for breach of the implied covenant of good faith and fair dealing.  *See, e.g., McClure v. Nw. Ohio Cardiology Consultations, Inc.*, 2012-Ohio-1106, at *4 (Ohio Ct. App. March 16, 2012) ("It is well-established that every contract has an implied covenant of good faith and fair dealing . . . .").

## CONCLUSION

For the reasons stated above, IFIC's motion for judgment on the pleadings pursuant to Rule 12(c) is granted in part and denied in part.  TolTest cannot state a tort claim for bad faith but may proceed on a claim for breach of the covenant of good faith and fair dealing implied by Ohio law into the surety agreement.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge