UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TolTest, Inc.,            Case No. 3:12-cv-01821

    Plaintiff

v.            MEMORANDUM OPINION
           AND ORDER

Purcell P&C, L.L.C., et al.,

    Defendants

## I. INTRODUCTION

Plaintiff TolTest, Inc., moves for partial summary judgment pursuant to Rule 56 and asks that I enter judgment in its favor against Defendants Purcell P&C, LLC, ("PPC") and International Fidelity Insurance Company ("IFIC") on TolTest's claims for breach of contract and on PPC's counterclaim for breach of contract. (Doc. No. 43). PPC and IFIC oppose TolTest's motion. (Doc. No. 48). Defendants also move to strike certain statements in and exhibits attached to affidavits TolTest filed in support of its motion for summary judgment, (Doc. No. 53), which TolTest opposes, (Doc. No. 56). For the reasons stated below, TolTest's motion is denied and Defendants' motion is granted in part, and denied in part as moot.

## II. BACKGROUND

TolTest was the prime contractor on a contract with the United States Department of the Navy to repair underground fuel tanks at FISC Manchester, a naval supply base in Bremerton,

Washington. The United States Naval Supply Systems Command ("NAVSUP") operated the supply base and the United States Naval Facilities Engineering Command ("NAVFAC") had oversight responsibilities for the repair project and also awarded the prime contract to TolTest. After soliciting bids, TolTest selected PPC as a subcontractor on the project and PPC began work in January 2011.

TolTest terminated the subcontract by letter on September 19, 2011, following several months of NAVFAC inspections and several rounds of emails and letters between NAVFAC, TolTest, and PPC. Over the next few months, TolTest and PPC discussed potential corrective action plans that would allow PPC to continue work on the project. Ultimately, those discussions were unsuccessful and the project proceeded with a replacement subcontractor.

Subsequently, PPC filed suit in federal court in the Western District of Washington, asserting claims against TolTest for breach of contract and violation of the Miller Act, 40 U.S.C. § 3133. Upon TolTest's motion, District Judge Benjamin Settle dismissed PPC's complaint without prejudice after concluding the subcontract's forum-selection clause was valid and applicable both to PPC's breach of contract claim and its Miller Act claim. *Purcell P & C, LLC v. TolTest Inc.*, No. C12-5234, 2012 WL 2871787 (W.D. Wash. July 12, 2012). TolTest then filed suit in this court, alleging PPC breached the subcontract and IFIC breached its suretyship duties. TolTest now seeks partial summary judgment.

### III. STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the nonmoving party bears the ultimate burden of proof at trial, the movant is entitled to summary judgment if the movant shows that the nonmoving party failed to present evidence "to support an essential element of his or her claim." *Celotex Corp v. Catrett,* 477 U.S. 317, 322-23 (1986).

If the movant satisfies this burden, the nonmoving party "must present specific facts setting forth a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The nonmoving party needs only to present evidence from which a reasonable jury could find in that party's favor. *Id.* at 251. "All of [that] evidence and any inferences that may be drawn from that evidence [must be viewed in a] . . . light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The nonmoving party, however, must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson,* 477 U.S. at 247-48. The party opposing the motion "must show she *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir. 2009) (emphasis in original). Summary judgment shall be awarded "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317.

## IV. ANALYSIS

### A. TOLTEST'S TERMINATION OF THE SUBCONTRACT

TolTest terminated the subcontract by letter on September 19, 2011. The letter stated PPC failed to prevent smoking in designated nonsmoking areas and performed an unspecified quantum of "deficient work," for which TolTest believed PPC was financially responsible. (Doc. No. 43-5 at 43). TolTest argues PPC knew both TolTest and NAVFAC had serious concerns about PPC's performance of its contractual responsibilities and points to several emails from August and September 2011 "alert[ing] PPC to equipment and quality issues" and requesting PPC take corrective action. (Doc. No. 61 at 15).

TolTest highlights an August 11, 2011 email from Cara Beth Anderson-Hewitt, TolTest's project manager for the FISC Manchester project, in which Anderson-Hewitt stated "it [would] be necessary for TolTest to take contractual action" against PPC if PPC did not address equipment and personnel issues. (Doc. No. 43-3 at 10). TolTest also points to an August 25, 2011 letter, titled "Cure Notice," from Donna Fisher, the subcontract administrator, describing TolTest's concerns about "manpower, equipment, quality, and schedule issues." (Doc. No. 43-5 at 36-37). Additionally, TolTest identifies a September 15, 2011 email from Tom Riddle, a TolTest project manager, in which Riddle informs PPC that the Navy postponed an inspection undertaken the previous day after discovering unsatisfactory conditions. (Doc. No. 43-6 at 9). Riddle requested a meeting with PPC representatives at 1:00 p.m. on September 15 and a corrective action plan by the morning of September 16. (Id.).

PPC argues these communications did not give PPC notice that TolTest considered PPC to be in default under the terms of the contract and there is an issue of fact regarding whether TolTest complied with Article 8.2. (Doc. No. 48 at 41). I conclude TolTest fails to carry its burden of proving there is no genuine dispute of material fact as to whether it complied with the contractual notice provision and therefore is not entitled to summary judgment.

Article 8.2 of the subcontract states as follows:

> In the event that [PPC's] default under Article 8.1 continues for two (2) Days after written notice thereof by TolTest to [PPC], or immediately in the event that such default, in the judgment of TolTest, cannot be cured within a two (2) Day period after notice of default, TolTest may without further notice terminate this Subcontract or any separable part thereof . . . .

(Doc. No. 1-4 at 22). Though TolTest argues "PPC is presumed to know the terms of the Subcontract and what constitutes a default," the contract assigns the responsibility of identifying a default to TolTest. While TolTest identifies numerous communications between it and PPC in the months prior to the contract termination, TolTest fails to carry its summary judgment burden of

4

proving the absence of a genuine dispute of material fact as to whether it fulfilled its responsibilities under Article 8.2. Riddle's September 15 email does not state TolTest considered PPC to be in default under the terms of the subcontract. Further, the September 19 termination letter does not reference the contents of Riddle's email or Fisher's August 25 cure notice and does not specifically identify a contractual default which PPC could not cure within two days. As PPC notes, under Ohio law[1], "a party must comply with all express conditions to be performed in [the event] of [a] breach before it can claim damages by reason of the breach." *Au Rustproofing Ctr., Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985) (*citing Bell Bros. v. Robinson*, 28 Ohio C.D. 160, 163-64, 5 Ohio App. 454, 458 (Ohio Ct. App. 1916)). Viewing all facts and drawing all inferences in the light most favorable to PPC, I conclude there is a genuine dispute concerning the preliminary question of whether TolTest complied with its duties under Article 8.2 "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

  TolTest also argues it was impossible for PPC to perform its contractual duties because PPC was responsible for maintaining its access to the base and NAVFAC revoked PPC's site passes following the September 14 inspection. (Doc. No. 61 at 21). PPC has filed a motion to strike portions of affidavits from Riddle and Christopher Fryzel, a project director with TolTest, arguing those affidavits contain hearsay and cannot be used to support TolTest's summary judgment motion.[2] (Doc. No. 53). In their affidavits, Riddle and Fryzel stated the Navy ordered TolTest to take away PPC's site passes. (Doc. No. 43-6 at 4; Doc. No. 43-2 at 7). TolTest argues the statements are not hearsay because they are not offered to prove the truth of the matter asserted and

---

[1] Ohio law governs the "validity, interpretation, and performance" of the subcontract. (Doc. No. 1-4 at 30).
[2] The remainder of PPC's motion, which seeks to exclude other evidence as well, is not pertinent to my disposition of TolTest's summary judgment motion and is denied as moot.

"amount to orders, commands or instructions." (Doc. No. 56 at 16). TolTest's arguments are unpersuasive.

A statement is hearsay if it is made by a person other than the declarant and is offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801. A statement is a verbal act, and thus nonhearsay, "where legal consequences flow from the fact that words were said, *e.g.,* the words of offer and acceptance which create a contract." *Preferred Prop. Inc. v. Indian River Estates, Inc.,* 276 F.3d 790, 799 n. 5 (6th Cir.2002). TolTest does not explain why Riddle and Fryzel's contentions that the Navy told TolTest to take away PPC employees' site passes are relevant other than to prove the Navy revoked the site passes – that is, for the truth of the matter asserted. TolTest explicitly argues "it was acting on NAVFAC orders" when its employees "physically retrieved the site passes of PPC employees . . . ." (Doc. No. 61 at 20).

TolTest attempts to rescue its proffered evidence by arguing it is evidence of a verbal act and therefore is not hearsay. This argument is unsuccessful because TolTest has not shown the alleged statements from NAVFAC employees to TolTest employees have any legal significance. TolTest repeatedly argues PPC was responsible for obtaining site passes for its employees and chastises PPC for its "mistaken[ ] assum[ption] that TolTest . . . control[led] access to a military base . . . ." (Doc. No. 61 at 16). The NAVFAC statements were not orders or commands because they did not create any legal obligation for TolTest. PPC's motion to strike is granted with regard to the challenged statements in Riddle's and Fryzel's affidavits.

TolTest has the burden of "citing to particular parts of materials in the record" to support its assertion that there is no genuine dispute of material fact on the issue of PPC's access to FISC

Manchester. Fed. R. Civ. P. 56(c)(1). It has failed to produce evidence that could be admissible at trial and therefore it is not entitled to summary judgment on the basis of this argument.[3]

Article 8.2 requires that TolTest provide notice of default and TolTest has not shown the absence of a genuine dispute of material fact as to whether it failed to provide notice sufficient under the terms of the contract. TolTest's motion is denied.

## B. THE WASHINGTON LITIGATION

TolTest asserts PPC breached the subcontract by filing suit in federal court in Washington when the subcontract's forum-selection clause specified any lawsuit arising out of or relating to the subcontract must be filed in Ohio. (*See* Doc. No. 43-5 at 30). TolTest argues it "is entitled to recover its attorney fees and costs as damages for PPC['s] acknowledged violation of the Subcontract's forum selection clause." (Doc. No. 43-1 at 22). PPC argues there is no Ohio law on the subject of whether a party may recover attorney fees as damages for breach of a forum-selection clause and I "should decline TolTest's invitation to make new Ohio law on the subject . . . ." (Doc. No. 48 at 46). TolTest responds that it seeks only "to recover losses sustained as a result of PPC's breach of contract" and that Ohio law permits an award of attorney fees as damages for breach of a forum-selection clause. (Doc. No. 61 at 23-24).

Ohio courts generally follow the "American rule" when considering a party's request for recovery of attorney fees, under which a prevailing party "may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 400 (Ohio 2009) (*citing Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 514 N.E.2d 702 (Ohio 1987)). The Supreme Court of Ohio recognizes some exceptions to this rule. A prevailing party may recover attorney fees when a

---

[3] TolTest also argues it is entitled to prevail because Dave Purcell admitted NAVFAC removed PPC from the project. While Purcell wrote in an email "[r]ecently . . . I mentioned NAVFAC had suspended us from the Manchester project . . ." he also wrote PPC and TolTest were attempting to negotiate a settlement and he could not provide any more details. (Doc. No. 62-8 at 2). Purcell did not discuss the site passes and his nondescript statement does not establish the absence of a genuine dispute of material fact or rescue TolTest's proffered hearsay evidence.

statutory or contractual provision requires the losing party to pay fees, or when the losing party has acted in bad faith. *Wilburn*, 906 N.E.2d at 400 (*citing Nottingdale*, 514 N.E.2d at 704 *and Pegan v.Crawmer*, 679 N.E.2d 1129, 1129-30 (Ohio 1997)); *see also Reagans v. MountainHigh Coachworks, Inc.*, 881 N.E.2d 245, 254 (Ohio 2008) ("In Ohio, parties to litigation generally are responsible for their own attorney fees, absent a statute or an enforceable contract providing for the losing party to pay the prevailing party's attorney fees, or absent bad faith by the unsuccessful litigant.").

TolTest does not point to any of these exceptions.[4] Instead, TolTest argues the attorney fees it incurred defending against the Washington litigation are part of the measure of damages resulting from PPC's breach of the forum selection clause. TolTest asserts *Maisongale Electrical-Mechanical, Inc. v. Construction One, Inc.*, 806 N.E.2d 148 (Ohio 2004), is "the lone Ohio authority on the subject of defense costs as damages for breach of a venue clause," and provides the necessary legal basis to support of a grant of summary judgment. (Doc. No. 61 at 24). TolTest's characterization of *Masiongale* is far too generous, however, and its argument fails.

In *Maisongale*, a magistrate with the Franklin County, Ohio Court of Common Pleas issued a decision which, in part, awarded attorney fees to a general contractor for a subcontractor's breach of a forum selection clause; the common pleas judge adopted the magistrate's decision after overruling objections from both parties. *Maisongale*, 806 N.E.2d at 150. The entirety of the Supreme Court of Ohio's discussion of that ruling is as follows: "Maisongale did not appeal from the judgment that it had violated the lien-waiver and forum-selection clauses." *Id*. TolTest has not produced either the opinion of the magistrate or the common pleas judge and cannot show whether either opinion

---

[4] Nor would these exceptions entitle TolTest to relief. There is no applicable statutory or contractual provision and PPC's initiation of litigation in Washington was not in bad faith. In Washington, PPC also filed a claim under the Miller Act, which provides that the appropriate venue for such an action is "the United States District Court for any district in which the contract was to be performed and executed . . . ." 40 U.S.C. § 3133(b)(3)(B). As Judge Settle noted, while several circuits have concluded a contractual forum selection clause supersedes this provision of the Miller Act, there is no binding precedent from the Ninth Circuit. *Purcell P & C v. TolTest*, 2012 WL 2871787, at *8-9. In the absence of such authority, and in combination with arguments concerning economy of judicial resources and access to witnesses and evidence, PPC had a good faith basis for filing suit in Washington.

offers a reasoned explanation of the fee award. Instead TolTest relies on the Supreme Court of Ohio's matter-of-fact recitation of the case's procedural history as binding state law. There is no dispute PPC violated the forum selection clause by filing suit in Washington. TolTest, however, has failed to produce any evidence or legal authority to demonstrate it is entitled to relief beyond what it already has achieved – vindication of its contractual right to sue and be sued in Ohio only. TolTest is not entitled to summary judgment on this claim.

## V.     CONCLUSION

For the reasons stated above, TolTest's motion for summary judgment, (Doc. No. 43), is denied. Defendants' motion to strike, (Doc. No. 53), is granted as to the fourth sentence of Paragraph 13 of Thomas Riddle's affidavit, (Doc. No. 43-4 at 4), and the last sentence of Paragraph 15 and the first sentence of Paragraph 16 of Christopher Fryzel's affidavit, (Doc. No. 43-2 at 7). The remainder of Defendants' motion to strike is denied as moot.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge